**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| BEHNOOSH DASHTI,<br><br>    Plaintiff<br><br>    v.<br><br>DERRICK STAMPER, Chief Patrol<br>Agent of the Houlton Sector, U.S.<br>Border Patrol;<br>RODNEY SCOTT, Commissioner of<br>U.S. Customs and Border Protection; and<br>MARKWAYNE MULLIN, Secretary of<br>Homeland Security,<br><br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)        No. 1:26-cv-00372-SDN<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AMENDED COMPLAINT

Plaintiff Behnoosh Dashti, through her undersigned counsel, states the following as her

Complaint against Defendants Derrick Stamper, in his official capacity as Chief Patrol Agent of

the Houlton Sector, U.S. Border Patrol; Rodney Scott, in his official capacity as Commissioner of

U.S. Customs and Border Protection; and Markwayne Mullin, in his official capacity as Secretary

of Homeland Security:

### INTRODUCTION

1.      Plaintiff is a dedicated family physician, spouse, and mother who has built her home

and life in Presque Isle, Maine, where she has provided much-needed primary medical care to

Aroostook County's Medically Underserved Population through the A.R. Gould Hospital since

lawfully entering the United States in 2022 on an H-1B nonimmigrant visa. She lives in Presque

Isle with her husband, also a physician serving the local hospital, and their 12-year-old daughter,

and she has become part of the community that depends on her care. In April 2026, while trying

to follow guidance from the Maine Bureau of Motor Vehicles ("BMV") so she could renew her

driver's license and continue her ordinary life and work, Plaintiff briefly crossed into Canada for a matter of minutes, to check in at the Fort Fairfield Port of Entry with her valid Canadian passport and renewed H-1B visa in hopes of triggering an update to her immigration status in the Maine BMV computer system to facilitate her driver's license renewal. Despite her cooperation with Customs and Border Protection ("CBP"), valid documentation, established family home, and essential role as a local primary care doctor, CBP deemed her inadmissible for reentry, invoking an inapplicable documentary ground for inadmissibility without meaningful explanation, leaving her separated from her home, family, patients, clothing, and possessions, and threatening to bar her from returning to the life she had lawfully and responsibly built in Maine.

2.    Plaintiff respectfully asks that the Court enter judgment against Defendants finding that (i) CBP's determination that Plaintiff is inadmissible to the United States under 8 U.S.C. § 1182(a)(7)(A)(i)(I) is unlawful, arbitrary and capricious because Plaintiff was and is in possession of a valid unexpired H-1B visa and was and is in possession of a valid, unexpired Canadian passport, and further unlawful as a disguised finding under § 1182(a)(3)(B) where no Terrorism-Related Inadmissibility Grounds ("TRIG") exist to lawfully support CBP's determination of Plaintiff's inadmissibility; and (ii) Defendants' mishandling of Plaintiff's requested readmission to the United States and warning that Plaintiff is undergoing further security review in Washington, D.C., violates her constitutional due process rights because Plaintiff has established through her prior residency and substantial ties to the United States and her Presque Isle community at the time of the inadmissibility determination and has otherwise resulted in an unreasonable delay of her right to enter the United States as a Canadian national. Plaintiff respectfully prays that the Court enjoin Defendants from repeating these violations of law, and award Plaintiff her reasonable attorney fees and costs pursuant to 28 U.S.C. § 2412.

**JURISDICTION AND VENUE**

3.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the Administrative Procedure Act and the Immigration and Nationality Act.

4.     The APA supplies both the cause of action and the waiver of sovereign immunity. 5 U.S.C. §§ 702, 704.

5.     The Court may grant declaratory and injunctive relief under 28 U.S.C. §§ 2201– 2202 and 5 U.S.C. §§ 705–706.

6.     Venue is proper pursuant to 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to the claim occurred at the United States Port of Entry in Fort Fairfield, Maine. Venue is also proper pursuant to 28 U.S.C. § 1391(e)(1)(C) because Plaintiff maintains a residence in Presque Isle, Maine, and there is no real property at issue.

**FACTS COMMON TO ALL COUNTS**

**A.     Plaintiff's Established Ties to the United States as a Medical Primary Care Provider**

7.     Plaintiff is a 52-year-old medical physician who is a citizen of Canada and Iran, born in Tehran, Iran in 1974.

8.     Plaintiff was lawfully admitted to the United States in December 2022 with a valid H-1B visa that facilitates her ability to serve patients across Aroostook County, Maine, as a primary care provider in family medicine through Presque Isle's A.R. Gould Hospital.

9.     Since 2022, Plaintiff has made her home in Presque Isle, where she lives with her spouse and her 12-year-old daughter, and is an active part of the Presque Isle community.

10.     Plaintiff's husband is also a citizen of Canada and Iran, admitted to the United States with a valid H-1B visa as a medical physician working at A.R. Gould Hospital as a surgeon.

3

Plaintiff's 12-year-old daughter is a citizen of Canada.

11.     The federal government has long recognized Presque Isle, Maine, and the broader Aroostook County community as a designated Medically Underserved Area, Medically Underserved Population, and Health Professional Shortage Area with inadequate access to primary care medical services such as those that Plaintiff provides for Aroostook County patients.

12.     After years of providing medical care to the Aroostook County community, Plaintiff's H-1B visa was renewed in November 2025. A true copy of Plaintiff's renewed H-1B visa is filed under seal as Exhibit 1. A redacted version of Plaintiff's renewed H-1B visa is attached hereto as **Exhibit A**.

13.     Plaintiff holds a valid, unexpired Canadian passport. A true photograph of Plaintiff's valid passport is filed under seal as Exhibit 2. A redacted photo of Plaintiff's valid passport is attached hereto as **Exhibit B**.

### B.     CBP's Determination of Plaintiff's Inadmissibility for Reentry in April 2026

14.     In February 2026, Plaintiff sought to renew her expiring Maine driver's license. Plaintiff met with a representative of Maine's BMV regarding her license renewal, who told Plaintiff that the state's records system was not updated to show Plaintiff's renewed H-1B visa. Nearly two months later, the BMV's system had not received updated USCIS records confirming Plaintiff's renewed H-1B visa.

15.     On April 8, 2026, in an effort to provide the Maine BMV with an updated H-1B visa stamp with days of her license's expiration date, Plaintiff drove alone to the United States Port of Entry in Fort Fairfield, Maine to present herself to CBP to request an updated visa stamp.

16.      Prior to April 2026, Plaintiff had repeatedly and lawfully crossed between the United States and Canada border without issue – most recently in or around August 2025 – and

4

she had no reason to believe that her ability to do so had changed.

17.     Nonetheless, on April 8, Plaintiff had no intent to leave the United States.

18.     Upon arrival at the port of entry, Plaintiff perceived that the only means to check in with CBP for the updated passport stamp was by driving across the Canadian border and turning around to reach the United States port of entry's intake.

19.     In total, Plaintiff was in Canada for a matter of minutes, if not seconds, before presenting herself to CBP for reentry to the United States.

20.     Plaintiff provided CBP with her renewed H-1B visa and valid Canadian passport.

21.     Upon information and belief, CBP Officer Bradley Goshorn believed that Plaintiff did not have necessary documentation to reenter the United States, and required Plaintiff to submit to questioning about her immigration status through a process known as "secondary inspection."

22.     Plaintiff cooperated with CBP's requests in every respect and answered every question that was asked of her.

23.     Plaintiff was held in CBP custody at the Fort Fairfield Port of Entry for 10 hours.

24.     During the course of CBP's custody and secondary inspection, Officer Goshorn took control of Plaintiff's purse, car keys and telephone, and interrogated her.

25.     During its first interview, CBP inquired about names associated with contacts in Plaintiff's phone's directory and Persian-language social media posts by third parties who happened to appear in Plaintiff's social media feed.

26.     Yet CBP's questioning focused substantial attention on Plaintiff's mother's employment over 45 years ago as a human resources clerk for a non-military branch of the pre-revolutionary Iranian government, an employment that ended around 1980, shortly after the Islamic Revolution occurred.

27. During related questioning, Plaintiff expressed that she and her family hold hatred for the Iranian regime, evidenced by her own family's acts: Plaintiff's father was an activist against the regime; the father of Plaintiff's husband was executed by the regime. Plaintiff fled to Canada in 2008 and has no intention of returning to Iran.

28. Plaintiff was additionally asked to share her opinions about on the ongoing military conflict between the United States and Iran. Plaintiff expressed that she is thankful to President Donald Trump for the death of Iran's ayatollah, an event she described as a gift to all Iranian people. Plaintiff expressed sadness that war was necessary, but expressed hope that it will lead to better days for Iran.

29. Hours later, Officer Goshorn initiated a second, more formal interview that CBP transcribed. A true copy of the CBP-prepared transcript of Plaintiff's second interview is filed under seal simultaneously herewith as Exhibit 3. A redacted version of the CBP-prepared transcript of Plaintiff's interview is attached hereto as **Exhibit C**.

30. The CBP-transcribed interview includes only CBP's second interview session for Plaintiff, without any reference or mention of the initial interview while held in CBP custody.

31. CBP Officer Goshorn ultimately informed Plaintiff that she is inadmissible to the United States pursuant to INA § 212(a)(7)(A)(i)(I) (codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I)).

32. Plaintiff requested that CBP allow her an opportunity to contact her attorney, but her request to consult with counsel was denied.

33. No additional information was provided to Plaintiff to explain CBP's determination that Plaintiff is inadmissible to the United States.

34. Plaintiff was permitted to withdraw her application for reentry.

35. Plaintiff was subsequently released into Canada after midnight the following day.

36.     At the time Plaintiff was determined inadmissible to the United States and unable to reenter, Plaintiff's sole residence was Presque Isle, Maine. In Canada, Plaintiff had no abode, no clothing to wear, and no possessions aside from the stray items in her car at the time she left her Presque Isle home that day.

37.     Upon information and belief, CBP initiated further review into Plaintiff's background and its ability to lawfully apply TRIG provisions to bar Plaintiff's admissibility for reentry to the United States pursuant to 8 U.S.C. § 1182(a)(3)(B).

38.     CBP representatives have provided no information regarding the status of any further security review aside from representations that Plaintiff is inadmissible.

39.     Upon information and belief, CBP has erroneously applied TRIG to designate Plaintiff as inadmissible to reenter the United States based upon Plaintiff's mother's history as an administrative employee of the Iranian government over 45 years ago.

40.     Yet Defendants have refused to disclose any findings or conclusions, or otherwise provide Plaintiff or her representatives any opportunity to be heard in her own defense.

41.     Should Plaintiff seek reentry to the United States now, CBP has advised that she would be deemed inadmissible under 8 U.S.C. § 1182(a)(3), and subject to an unreviewable, expedited removal order thereafter barring Plaintiff from reentering the country.  Such agency action would unlawfully preclude Plaintiff from returning to her family and her patients in Maine.

## LEGAL BACKGROUND

### A.     The H-1B Nonimmigrant Classification

42.     The Immigration and Nationality Act ("INA") authorizes United States employers to employ foreign nationals on a temporary basis in specialty occupations through the H-1B nonimmigrant classification. 8 U.S.C. § 1101(a)(15)(H)(i)(b).

7

43.     To employ a worker in H-1B status, the prospective employer must first file a Form I-129 Petition for a Nonimmigrant Worker with USCIS, which determines the worker's eligibility for the classification before the worker may apply for a visa or seek admission to the United States. 8 U.S.C. § 1184(c)(1); 8 C.F.R. § 214.2(h)(1)(i).

44.     Once USCIS approves the H-1B classification, the nonimmigrant may thereafter apply for an H-1B visa. 20 C.F.R. § 655.700(b)(3).

45.     An individual holding valid H-1B status is, by definition, a "nonimmigrant" under the INA, and is not an "immigrant." 8 U.S.C. § 1101(a)(15).

46.     Unlike other nonimmigrant classifications, which statutory law requires to maintain a foreign residence with no intention of abandoning it, H-1B nonimmigrants are not subject to this requirement. 8 U.S.C. § 1184(h).

**B.     The Documentary Requirements for Admission and the Canadian Visa Exemption**

47.     A foreign national arriving at the United States is an "applicant for admission" who, at the port of entry, must present the documents required for the category of admission sought and establish to the satisfaction of the inspecting officer that she is not subject to removal and is entitled to enter. 8 U.S.C. § 1225(a); 8 C.F.R. § 235.1(f)(1).

48.     The INA prescribes separate documentary requirements for immigrants and nonimmigrants. An immigrant who is not in possession of a valid, unexpired immigrant visa or equivalent entry document is inadmissible. 8 U.S.C. § 1182(a)(7)(A)(i)(I). A nonimmigrant, by contrast, is governed by Section 1182(a)(7)(B)(i), which requires only that the nonimmigrant possess (i) a passport valid for the requisite period and (ii) a valid nonimmigrant visa or border crossing identification card at the time of application for admission. 8 U.S.C. § 1182(a)(7)(B)(i).

49.     Both the Department of Homeland Security and the Department of State exempt Canadian citizens from the nonimmigrant visa requirement. A visa is generally not required for

8

Canadian citizens except those seeking admission in the E, K, S, or V nonimmigrant classifications. 8 C.F.R. § 212.1(a)(1); 22 C.F.R. § 41.2.

50.     The H-1B classification is not among the excepted categories. A Canadian citizen therefore does not require an H-1B visa to be admitted; the presentation of an approved H-1B petition together with a valid passport satisfies the documentary requirements of Section 1182(a)(7)(B).

**C.      CBP's Limited Authority, the Right to Judicial Review, and Due Process**

51.     The authority to revoke a validly issued visa rests, as a general matter, with the consular officer or the Secretary of State. 8 U.S.C. § 1201(i).

52.     An officer also has discretion to grant or deny an applicant's request "to withdraw the application for admission." 8 C.F.R. § 235.4.

53.     An applicant who is permitted to withdraw an application for admission must depart immediately from the United States. 8 U.S.C. § 1225(a)(4).

54.     The issuance of a visa does not entitle a person to admission; conversely, a CBP officer does not possess unbounded discretion to deny entry.

55.     To find an applicant inadmissible, a CBP officer must identify a valid legal basis establishing that the applicant is inadmissible under the INA or another provision of law. 8 U.S.C. § 1201(h); 8 C.F.R. § 235.1(f)(1).

56.     A CBP officer's admissibility determination at a port of entry does not trigger the doctrine of consular nonreviewability, which shields a consular officer's decision to issue or withhold a visa. The doctrine does not extend to the admissibility determinations of CBP officers at the border.

<b><u>COUNT I</u></b>
<b>APA Review of Agency Action that is Arbitrary, Capricious,
an Abuse of Discretion, and Not In Accordance with Law
5 U.S.C. § 706(2)(A)</b>

57.    Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

58.    CBP's determination on April 8, 2026, that Plaintiff is inadmissible to the United States was a final agency action for which no other adequate remedy at law exists.

59.    CBP's determination is likely to repeat itself when Plaintiff subsequently seeks admission to the United States.

60.    CBP's determination is reviewable under the APA because the doctrine of consular nonreviewability does not apply to government action taken at a port of entry.

61.    For CBP to find a person seeking admission to the United States at the border inadmissible, CBP must have a valid legal basis for its determination.

62.    CBP's determination that Plaintiff is inadmissible was arbitrary and capricious, and based upon the agency's erroneous application of 8 U.S.C. § 1182 in two respects:

   (i)    CBP erred in concluding that Plaintiff's presentation of a valid, unexpired H-1B visa and valid, unexpired Canadian passport was insufficient documentation to satisfy the minimum documentation requirements under Section 1182(a)(7); and

   (ii)    CBP erred in applying Terrorism-Related Inadmissibility Grounds under Section 1182(a)(3)(B) as a basis to find Plaintiff inadmissible because none of the statutory TRIG provisions apply to Plaintiff.

63.    CBP cited Section 1182(a)(7)(A)(i)(I) as its basis for determining that Plaintiff is inadmissible for entry to the United States.

10

64.     Section 1182(a)(7)(A) governs documentation requirements for individuals defined under the INA as "immigrants," and is not applicable to Plaintiff's request for admission to the United States.

65.     Plaintiff holds a valid, unexpired H-1B visa, thereby meeting the INA definition of a "nonimmigrant," not subject to the provisions of Section 1182(a)(7)(A) that CBP purportedly relied upon in determining Plaintiff is inadmissible.

66.     Rather, Section 1182(a)(7)(B) controls to govern the documentation requirements for individuals, such as Plaintiff, defined under the INA as "nonimmigrants."

67.     Section 1182(a)(7)(B)(i) authorizes CBP to find a nonimmigrant inadmissible to the United States based upon inadequate documentation only where the nonimmigrant seeking admission:

> (I)   is not in possession of a passport valid for a minimum of six months from the date of the expiration of the initial period of the alien's admission or contemplated initial period of stay authorizing the alien to return to the country from which the alien came or to proceed to and enter some other country during such period, or
>
> (II)  is not in possession of a valid nonimmigrant visa or border crossing identification card at the time of application for admission

68.     Other subsections of Section 1182(a)(7)(B) relate to waivers of the documentation requirements and are not relevant to Plaintiff's request for admission.

69.     Plaintiff's request for admission on April 8, 2026, met all requirements of Section 1182(a)(7)(B)(i) because Plaintiff presented *both* a valid Canadian passport that does not expire until 2034; *and* a valid, unexpired H-1B visa.

11

70.    CBP's alternate, undisclosed basis for finding Plaintiff inadmissible under TRIG provisions set forth in Section 1182(a)(3)(B) was also an error of law, because none of TRIG's statutory subsections apply to Plaintiff.

71.    TRIG authorizes CBP to find a person inadmissible based upon plausible connections to, affiliations with or support for designated terrorist organizations such as the Islamic Revolutionary Guard Corps, a branch of the Iranian military (the "IRGC").

72.    Although Plaintiff was born in Iran, Plaintiff has no record or history of involvement with the IRGC in any respect.

73.    Plaintiff is not a member of the IRGC, has never "engaged in a [IRGC] activity," has never served in the Iranian military or received military training of any kind; has never incited or supported any IRGC activity; and does not otherwise represent or support the IRGC or any associated group.

74.    Plaintiff believes that none of her contacts are members of the IRGC or supporters of the IRGC, and that none of her contacts' relatives who are known to Plaintiff are members or supporters of the IRGC.

75.    CBP has not and will not disclose the particular TRIG provision it relied upon as a basis to find Plaintiff inadmissible when she sought reentry to the United States on April 8, 2026 after over three years of living in the United States, raising her young family here, and providing essential primary medical care for the Presque Isle and broader Aroostook County communities.

76.    Upon information and belief, CBP has concluded that Section 1182(a)(3)(B)(i)(IX) renders Plaintiff inadmissible as the "child of an alien who is inadmissible under this subparagraph, if the activity causing the alien to be found inadmissible occurred within the last 5 years."

77.    Plaintiff's mother's prior work for the Iranian government until 1980 fails to lawfully trigger subsection IX because (i) Plaintiff's mother's role related to hiring for non-military government agencies; and (ii) Plaintiff's mother's work occurred over 45 years ago – decades after subsection IX's 5-year period in which a parent's actions or involvements could trigger the child's inadmissibility.

## COUNT II
### Due Process under the Fifth Amendment
### 5 U.S.C. § 706(2)(B), (D)

78.    Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

79.    Plaintiff is not merely a visa-holder who sought initial entry to the United States on April 8, 2026.

80.    Rather, Plaintiff lawfully gained admission to the United States in 2022, and thereafter has deeply established a family medical practice through the A.R. Gould Hospital, and made her family's home within the Presque Isle community, ties that correspond with and are analogous to the ties that go with permanent residence in the United States.

81.    Plaintiff's ties to the United States remain firmly in place.  Plaintiff's husband and 12-year-old daughter holding similar immigration status continue to live in the family's Presque Isle home; Plaintiff's husband continues to provide medical services as a surgeon for the Presque Isle hospital, and Plaintiff's patients continue to seek the opportunity to meet with Plaintiff to obtain essential medical care for themselves and their own families.

82.    Plaintiff, on April 8, 2026, never had the intent to leave the United States.  Rather, Plaintiff merely sought to meet the bureaucratic requirements of the Maine BMV based upon

erroneous BMV guidance on how to renew her driver's license in order to retain her ability to lawfully drive.

83.     That intent is evidenced by the fact that Plaintiff brought no suitcase with her, brought no spare clothing, and made no living arrangements in Canada prior to CBP's erroneous determination that Plaintiff was inadmissible for reentry.

84.     Plaintiff's absence from the United States on April 8, 2026, lasted for only minutes or seconds as Plaintiff immediately sought to turn around in order to present herself to the CBP Officer as she was advised to do by a Maine BMV employee.

85.     Such circumstances vested in Plaintiff certain constitutional due process rights to receive fair notice of the government's handling of her request for readmission to the United States and a reasonable opportunity to be heard in order to refute CBP's erroneous conclusions.

86.     The Due Process Clause of the Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

87.     Among the protections that Clause secures is the right to procedural due process — fair notice of government action that will work a deprivation, and a meaningful opportunity to be heard in one's own defense before that deprivation takes effect.

88.     Each Defendant is a federal officer or agency acting under color of federal law, and the challenged conduct constitutes final agency action that is reviewable, and subject to being held unlawful and set aside, under the APA. 5 U.S.C. §§ 702, 704, 706(2)(B), (D).

89.     Defendants' actions and mishandling of Plaintiff's efforts to seek readmission have violated Plaintiff's constitutional due process rights, including:

(i)     Giving Plaintiff incomplete, misleading or false information about the basis for CBP's determination of her admissibility;

14

(ii)    Taking Plaintiff into CBP custody and interrogating her while disregarding her express request to consult with counsel;

(iii)    Providing Plaintiff no opportunity to show that she had provided all documentation required for admission under Section 1182(a)(7)(B)(i), and to offer good cause that TRIG provisions under Section 1182(a)(3)(B) cannot and do not apply to her;

(iv)    Failing to disclose to Plaintiff results or findings from subsequent security screenings conducted since April 8, 2026; and

(v)    Inducing Plaintiff to re-apply for admission in a manner calculated to subject Plaintiff to a nonreviewable expedited removal action and a bar from reentry to the United States for at least five years.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Behnoosh Dashti respectfully requests that the Court enter judgment against Defendants on all counts, and further:

A.    Declare that CBP's April 8, 2026 determination that Plaintiff is inadmissible for reentry to the United States was arbitrary and capricious, and without lawful bases under either 8 U.S.C. §§ 1182(a)(7) or (a)(3)(B) to justify its action.

B.    Enjoin Defendants from finding Plaintiff inadmissible under Section 1182(a)(7) where Plaintiff presents a valid H-1B visa together with a valid Canadian passport that does not expire within 6 months of Plaintiff's date of reentry.

C.    Enjoin Defendants from unlawfully applying TRIG provisions under Section 1182(a)(3)(B) as a basis for determining Plaintiff is inadmissible absent a showing to this Court that evidence establishes a lawful and probable basis under TRIG to deem Plaintiff inadmissible.

15

D.      Award Plaintiff her costs and attorney fees pursuant to the Equal Access to Justice

Act, 28 U.S.C. § 2412; and

E.      Award such other relief that the Court deems just and proper.

Respectfully submitted this 24th day of July, 2026.

*Attorneys for Plaintiff*

/s/ James G. Monteleone
James G. Monteleone
BERNSTEIN SHUR
100 Middle Street, P.O. Box 9729
Portland, ME  04104-5029
(207) 774-1200
jmonteleone@bernsteinshur.com

/s/ Jesse M. Bless
Jesse M. Bless*
BLESS LITIGATION LLC
6 Vineyard Lane
Georgetown, MA 01833
jesse@blesslitigation.com

*Admitted *Pro Hac Vice*

16