**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| BEHNOOSH DASHTI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DERRICK STAMPER, Chief Patrol Agent of the Houlton Sector, U.S. Border Patrol; RODNEY SCOTT, Commissioner of U.S. Customs and Border Protection; and MARKWAYNE MULLIN, Secretary of Homeland Security, | ) | No. 1:26-cv-00372-SDN |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF THE EXPEDITED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## OVERVIEW

The opposition brief of Defendants—officers of U.S. Customs and Border Protection, U.S. Border Patrol, and the Department of Homeland Security (collectively "CBP," or the "Government")—confirms rather than defeats Plaintiff Behnoosh Dashti's basis for immediate injunctive relief. The Government submits no evidence, declaration, or sworn statement controverting the facts Dr. Dashti has shown establishing that she presented CBP with valid documentation satisfying 8 U.S.C. § 1182(a)(7)'s requirements, nor does the Government offer any justification for CBP's arbitrary inadmissibility determination. Further, the Government offers no facts or argument rebutting Dr. Dashti's evidence of irreparable harm to herself, her family, her patients, and her Aroostook County community, or challenging that the balance of equities tips in her favor. Instead, the Government's opposition only posits that CBP's inadmissibility determination is unreviewable by this Court in reliance on inapposite case law. In sum, the Government's arguments offer no basis to deny Dr. Dashti's motion.

## ARGUMENT

### I. Neither the doctrine of consular nonreviewability nor the claim that CBP's inadmissibility determination is non-final will circumvent this Court's review.

The Government's nonreviewability arguments fail because Dr. Dashti challenges CBP's nondiscretionary inadmissibility determination, not any consular decision to deny a visa. Moreover, that determination constituted final agency action reviewable under the Administrative Procedure Act ("APA") that capped CBP's decision as to Dr. Dashti's inadmissibility and is likely to repeat itself when Dr. Dashti next presents herself at the border.

#### A. The doctrine of consular nonreviewability does not apply.

The Government first erroneously relies on the doctrine of consular nonreviewability to argue that judicial review is unavailable, citing three inapposite cases: *Department of State v.*

*Muñoz*, 602 U.S. 899 (2024); *Trump v. Hawaii*, 585 U.S. 667 (2018); and *Doan v. INS*, 160 F.3d 508 (8th Cir. 1998). None of these cases extended the doctrine of consular nonreviewability to CBP determinations made at border ports of entry.[1]

Courts that have considered applying the doctrine under analogous circumstances, however, have rejected the theory. For example, *Atanackovic v. Duke*, 399 F. Supp. 3d 79 (W.D.N.Y. 2019), held that the doctrine of consular nonreviewability does not apply to a CBP officer's determination that a Canadian plaintiff presenting at a port of entry was inadmissible. *Id.* at 87-88. First, the court reasoned that "the Supreme Court has never extended this doctrine to individual admissibility determinations by CBP officers at the ports of entry." *Id.* at 87. Second, it concluded the applicable statutory language "distinguishes between the absolute discretion of consular officers and the legal authority of CBP officers." *Id.* at 88 (finding that while "a consular officer 'may' or may not issue a visa to an applicant who has made a proper application," a CBP officer denying admissibility at the border "need[s] a valid legal basis" to act).

*Gill v. Mayorkas*, No. C20-939, 2021 WL 3367246 (W.D. Wash. Aug. 3, 2021), reached the same conclusion, refusing to apply the doctrine of consular nonreviewability to APA review of a CBP officer's cancellation of the plaintiff's visa and determination of inadmissibility at a port of entry. *Id.* at *6-9. The doctrine giving deference to the discretion of consular officials cannot apply to CBP actions at a port of entry because such actions "are administrative and law-enforcement functions, not signs of discretionary authority to which courts must defer." *Id.* at *7.

Most recently, *Petrova v. U.S. Department of Homeland Security*, 807 F. Supp. 3d 313 (D.

[1] *Muñoz* involved a U.S. citizen's constitutional challenge to a consulate's denial of her noncitizen spouse's visa application. 602 U.S. at 902. *Trump v. Hawaii* involved a state's challenge to a Presidential Proclamation, and even then, the Supreme Court expressly declined to decide the issue of consular nonreviewability. 585 U.S. at 673-76. *Doan* involved an application for a discretionary waiver of grounds of excludability denied by an executive branch official based in Thailand. 160 F.3d at 508-09.

Vt. 2025), expressly adopted *Atanackovic*'s approach in holding that the court had jurisdiction to review a CBP officer's determination—made at the Boston Logan port of entry under the same statutory provision invoked against Dr. Dashti—that an arriving nonimmigrant was inadmissible. *Id.* at 335-36. Observing that "[i]n *Atanackovic*, the CBP officer found the plaintiff inadmissible based on the same statutory provision at issue in this case," "[t]he court f[ound] that approach persuasive and adopt[ed] it here." *Id.* at 336. *Petrova* further confirmed that the INA's bar on judicial review of visa revocations "refers only to the revocation of visas by a 'consular officer or the Secretary of State,'" and that "*Atanackovic* and *Gill* correctly distinguish between visa revocations undertaken by CBP officers and visa revocations made under the broad statutory discretion afforded a consular officer or the Secretary of State." *Id.* at 338.

Here, Dr. Dashti does not challenge a decision by the consular office to deny or revoke her H-1B status. Indeed, the Government concedes that "Plaintiff did not have any visa revoked." Defs.' Opp. Br., ECF No. 22 ("Opp."), at 5. Rather, Dr. Dashti challenges the CBP officer's determination at the border that she is inadmissible for lack of documentation despite having presented CBP with the required documentation showing her valid and approved H-1B status and valid Canadian passport. Under *Atanackovic*, *Gill*, and *Petrova*, the doctrine of consular nonreviewability does not apply to CBP's nonconsular, nondiscretionary determination.[2]

The Government's effort to distinguish case law cited in Dr. Dashti's opening brief misses the mark for similar reasons. The cited line of F-1 student visa cases stands for the proposition that a nonimmigrant visaholder may obtain preliminary injunctive relief under the APA where a non-consular immigration officer has failed to articulate a lawful justification for its decision under the

[2] The Government correctly concedes that jurisdiction-stripping provisions of 8 U.S.C. § 1252 do not apply here because there was never a final order of removal against Dr. Dashti. Opp. at 5; *see also Atanackovic*, 399 F. Supp. 3d at 88 (holding that a noncitizen who withdrew her application for admission "was not subject to an order of expedited removal," and therefore "judicial review is not precluded").

applicable laws or the factual record. The Government does not attempt to address those aspects of those cases. Nor does it attempt to address Dr. Dashti's opening discussion of *Atanackovic*.

**B. CBP's inadmissibility determination was a final action subject to APA review.**

CBP's inadmissibility determination was a final agency action with the legal consequence of preventing Dr. Dashti from rejoining her family or continuing her H-1B authorized work for her patients. Moreover, CBP's arbitrary determination, now documented in CBP files, is likely to be repeated when Dr. Dashti returns to the border for admission. Accordingly, CBP's determination constitutes final action subject to APA review. *See, e.g.*, *Petrova*, 807 F. Supp. 3d at 336-37 (reviewing CBP officer's Section 1182(a)(7)(A)(i)(I) inadmissibility finding as a decision separate from any removal decision); *Atanackovic*, 399 F. Supp. 3d at 92 (setting aside CBP's Section 1182(a)(7)(A)(i)(I) inadmissibility determination as "arbitrary and capricious, and not in accordance with law").

The APA authorizes judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "To be 'final,' agency action must (1) mark the consummation of the agency's decision-making process and (2) be one by which rights or obligations have been determined or from which legal consequences will flow." *Öztürk v. Trump*, 819 F. Supp. 3d 45, 56-57 (D. Mass. 2025); *see also Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

CBP's inadmissibility determination here meets both criteria for final agency action. The determination was the culmination of the officer's review of Dr. Dashti's application for admission to the United States, made after several interviews over the course of over ten hours of detention. *See* Dashti Decl. ¶¶ 6-10. There were no other steps or processes remaining for the CBP officer to effectuate the inadmissibility determination. Further, the determination affected Dr. Dashti's rights, with clear legal consequences where it prevented her from reentering the United States pursuant

to her valid H-1B status, despite her possession of the necessary documentation to do so. Moreover, the determination puts Dr. Dashti in the precarious position that if she were to seek reentry to the United States again, CBP could wrongfully deem her inadmissible under the same improper statutory provision and subject her to an unreviewable, expedited removal order barring her from reentering the country for at least five years. Given that Dr. Dashti has no other means to challenge CBP's wrongful determination—which is likely to repeat itself—and there is no other adequate remedy in a court, that determination is final and subject to review under the APA. *Cf. Atanackovic*, 399 F. Supp. 3d at 88, 92; *Petrova*, 807 F. Supp. 3d at 332, 336-37.

The Government's contention that Dr. Dashti "availed herself of the opportunity to withdraw her application for admission for the express purpose of avoiding a final determination by the Agency" inverts the record. *See* Opp. at 5. CBP first determined that Dr. Dashti is inadmissible under Section 1182(a)(7)(A); only after reaching that determination did CBP invite her to withdraw her application in lieu of expedited removal and release her into Canada. *See* Dashti Decl. ¶ 10; *see also* 8 C.F.R. § 235.4. The withdrawal thus did not prevent the consummation of CBP's decision-making process; it occurred only after CBP completed its determination that Dr. Dashti is inadmissible. Nor may the Government have it both ways. It acknowledges that no order of removal issued, while simultaneously contending that the very determination which prompted the offered withdrawal remains unfinalized. Were that correct, a CBP officer could insulate every inadmissibility determination from judicial review simply by offering a withdrawal in lieu of expedited removal, leaving the affected noncitizen no forum at all. This is precisely the circumstance in which Section 704 of the APA supplies review.

The Government's reliance on *Dubey v. Department of Homeland Security*, 154 F.4th 534 (7th Cir. 2025), similarly fails to support its contention that CBP's inadmissibility determination

remains unfinalized. *Dubey* involved challenges to immigration officers' determinations that foreign students had "misused" the optional practical training program available to them after completing their courses of study, which led to the revocation of their visas at the airports where they sought reentry. 154 F.4th at 536. The *Dubey* court concluded that the students had failed to challenge a final agency action because the antecedent determinations about their training programs "did not themselves revoke plaintiffs' visas," but rather were merely "inputs into the revocations." *Id.* at 537. In so concluding, the court analogized to an alien seeking to use the APA to challenge a denial of asylum, which "is a step along the way to removal but not itself a final [removal] order." *Id.* This reasoning does not apply here because CBP's inadmissibility determination *was* the ultimate agency action—not merely an administrative finding underpinning other CBP action—and *Dubey*'s concern about permitting review of an unreviewable order of removal is not implicated here where there was no such order of removal and the Government does not assert that there was any such order. *See supra* n.2. *Petrova* also rejected this framing, holding that a CBP officer's finding of inadmissibility under Section 1182(a)(7)(A) and any corresponding revocation "are separate decisions from the decision to order her removed under 1225(b)(1)," such that the INA's jurisdictional limitation "does not apply." *Petrova*, 807 F. Supp. 3d at 337.

## II. CBP cannot lawfully justify its inadmissibility determination based upon Dr. Dashti's pending change-of-status application for permanent residency.

Although the Government's opposition presents no sworn statements or evidence rebutting any of the facts presented in Dr. Dashti's motion, the Government nonetheless suggests in passing reference that Dr. Dashti's pending request for an adjustment of status to a lawful permanent resident is a factor relevant to the Court's analysis.[3] Even then, Dr. Dashti's applied-for change of

[3] The Government acknowledges that Dr. Dashti "does not request relief pending the disposition of her adjustment of status to a lawful permanent resident." Opp. at 6.

immigration status provides no justification for the Government's arbitrary and capricious determination that she is inadmissible for lack of Section 1182(a)(7) documentation.

During secondary review of her application for admission, Dr. Dashti mentioned that she had applied to adjust her status and become a permanent resident. *See* Compl. Ex. 3 at 3. Dr. Dashti's still-pending application for adjustment of status, however, was unrelated to her effort to reenter the United States in April after a momentary departure. Her intended purpose was made clear in response to the CBP officer's inquiry for "the reason for [her] travel to the United States," to which she answered: "I just crossed the border to re-enter to have my I-94 status updated. Since my H1B status was extended, I needed to update that status." Compl. Ex. 3 at 3.[4]

The Government's opposition offers nothing to suggest that Dr. Dashti's pending change-of-status application was a relevant factor in CBP's inadmissibility determination. But even if that purported basis were offered and evinced, it nonetheless fails to provide lawful justification for the CBP's arbitrary and unlawful determination that Dr. Dashti lacked the necessary immigration documentation under 8 U.S.C. § 1182(a)(7).

At the threshold, nothing in Section 1182(a)(7) requires an H-1B holder awaiting an adjudication of an adjustment-of-status application to present any unique or additional documentation for admission to the United States. Further, the mere pendency of Dr. Dashti's adjustment application could not convert her from a nonimmigrant seeking readmission under her lawful H-1B status subject to Section 1182(a)(7)(B) to an immigrant applicant subject to Section 1182(a)(7)(A), as CBP cited as the basis for its inadmissibility determination. Federal law recognizes that lawful H-1B status continues and co-exists with a pending change-of-status application. For example, 8 C.F.R. § 245.2(a)(4)(ii)(B) provides that H-1B holders awaiting action

[4] The I-94 is a form enclosed within the I-797A notice of approval of H-1B work authorization that CBP stamps upon initial, lawful admission to the United States. *See* Compl. Ex 1.

on a change-of-status application for permanent residency may freely exit and reenter the United States without being deemed to have abandoned their permanent residency application or their H-1B status, which remains in effect throughout the application process. Conversely, CBP could not lawfully construe Dr. Dashti's pending change-of-status application as an abandonment of her ongoing H-1B status or an indication that she intended to seek admission as an immigrant subject to Section 1182(a)(7)(A), and thereby disregard her presentation of valid documentation of her lawful work authorization under Section 1182(a)(7)(B) to support her intended return to work at her Presque Isle community hospital. *See* Compl. Ex. 3 at 3. At bottom, Dr. Dashti's valid Canadian passport and documentation of current H-1B work authorization remained sufficient to fully satisfy Section 1182(a)(7)'s documentation requirements. The fact that Dr. Dashti has applied to adjust her status and become a permanent resident fails to provide any justification for CBP's arbitrary and capricious determination that Dr. Dashti is inadmissible for lack of immigrant documentation required under Section 1182(a)(7)(A).

**III. Dr. Dashti's tailored request for relief is necessary, fair and workable.**

The injunctive relief Dr. Dashti seeks is narrowly tailored and necessary to prevent a repeat of CBP's unlawful inadmissibility determination. The Court, in crafting the appropriate injunctive relief, "must undertake an equitable weighing process to select a fitting remedy for the legal violations it has identified, taking account of what is necessary, what is fair, and what is workable." *North Carolina v. Covington*, 581 U.S. 486, 488 (2017) (internal citations and quotations omitted).

Contrary to the Government's characterization, Dr. Dashti's requested relief does *not* ask this Court to "bar the Government from ever utilizing certain statutorily authorized inadmissibility grounds as it pertains to Plaintiff." Opp. at 6. Rather, Dr. Dashti requests that the Court enjoin the Government from erroneously applying 8 U.S.C. § 1182(a)(7) as the basis to deny her admissibility

when she again presents her valid documentation of her H-1B approval together with her valid Canadian passport, which fully satisfy Section 1182(a)(7)'s requirements. This requested relief does not ask to exempt Dr. Dashti from the INA's documentation requirements, nor bar the Government from lawfully applying them. The Government's conduct to date demonstrates that the request is necessary; the risk that a second unlawful CBP determination could result in a nonreviewable removal order and multiyear reentry bar confirms that the requested relief is fair; and requiring Dr. Dashti to present her standard documentation—a valid H-1B authorization form and an unexpired passport—is plainly workable through CBP's standardized intake procedure.[5]

**CONCLUSION**

For the reasons stated in this reply and its opening brief, Plaintiff respectfully requests that the Court grant her motion for a TRO and preliminary injunction and enter the narrowly tailored injunctive relief requested.

Respectfully submitted this 18th day of August, 2026.

*Attorneys for Plaintiff*

/s/ James G. Monteleone
James G. Monteleone
Lucas L. Fortier
BERNSTEIN SHUR
100 Middle Street, P.O. Box 9729
Portland, ME 04104-5029
(207) 774-1200
jmonteleone@bernsteinshur.com
lfortier@bernsteinshur.com

[5] Dr. Dashti additionally maintains her request for an injunction barring the Government from applying undisclosed Terrorism-Related Inadmissibility Grounds ("TRIG") under 8 U.S.C. § 1182(a)(3)(B) without first satisfying this Court that evidence exists to reasonably establish a lawful and probable TRIG basis to deny Dr. Dashti's readmission. The Government's opposition does not discuss TRIG as an issue relevant to Dr. Dashti's admissibility. Given that the Government's opposition makes no such representation, Dr. Dashti's request would not burden CBP and would still preserve CBP's ability to exercise TRIG as a basis should it later identify evidence that TRIG might lawfully apply.

Jesse M. Bless
BLESS LITIGATION LLC
6 Vineyard Lane
Georgetown, MA 01833
jesse@blesslitigation.com